UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ROLAND A. ALONSO, ET AL.                                    CIVIL ACTION

VERSUS

WESTCOAST CORPORATION                             NO.: 13-00563-BAJ-RLB

RULING AND ORDER

Before the Court is Defendant Westcoast Corporation's ("Defendant") **Motion in Limine to Exclude Expert Testimony of Hannis T. Bourgeois, LLP, Ronnie E. Stamper, CPA, and Randy Bonnecaze, CPA (Doc. 23)**, which seeks to exclude expert testimony and expert reports that Plaintiff RCS Contractors, Inc. ("RCS") and its president, Plaintiff Roland A. Alonso (collectively, "Plaintiffs"), intend to introduce at trial. Oral argument is not necessary. For the reasons detailed below, Defendant's Motion is **DENIED**.

   I.  Background

This case arises from a construction project ("the Project") to relocate the Baton Rouge West Roosevelt Street Sewer Force Main that was supervised by the United States Army Corp of Engineers ("USACE"). (Doc. 1 at ¶ C-1). On August 23, 2010, Plaintiffs assert that RCS entered into a subcontract with Defendant under which it agreed to provide all of the labor, materials, equipment, and supervision required to complete the Project. (*Id.* at ¶ C-5). Under the terms of the subcontract, Plaintiffs

1

assert that RCS was required adhere to plans and specifications provided by the USACE. (*Id.*). Plaintiffs further assert that mismanagement of the Project resulting from deficient plans caused significant delays and extra work that, in turn, caused them to incur unexpected costs. (Doc. 1 at ¶¶ C-6, C-10, C-13, C-17—20). Plaintiffs allege, *inter alia*, that Defendant knew or should have known about deficiencies in the Project plans but nonetheless ordered work to continue, (*Id.* at C-6—17), and that Defendant failed to timely submit stand-by invoices to the USACE, (*Id.* at ¶ C-23—26). Because of Defendant's actions and inactions, Plaintiffs allege that it is liable for the damages they sustained. (*Id.* at ¶¶ E-1—5; J-1—K-4). Plaintiffs have asserted claims alleging breach of contract, detrimental reliance, and quatum meruit. (*Id.* at E-5—J-1).

Relative to the instant Motion, Defendant seeks to exclude two reports produced by the accounting firm Hannis T. Bourgeois, LLP ("HTB"), both of which Plaintiffs seek to use to prove over-head damages under the *Eichleay* formula. (Doc. 23-1 at pp. 1, 3, 6). The first report, titled "Independent Account's Review Report," is dated July 16, 2012, and is signed by HTB; the name of an individual accountant does not appear on the report. (Doc. 23-7 at p. 1). The first report is a financial review, which is less thorough than an audit, of RCS's financial statements for the year ending in December 31, 2011. (*Id.*). The second report, titled "Independent Accountant's Report on Applying Agreed-Upon Procedures," is dated May 15, 2014, and is signed by Ronnie E. Stamper, CPA. (Doc. 23-8 at pp. 1—3). The second report incorporates findings of the first report and uses additional data, namely RCS's

2

"QuickBooks" financial statements taken in the ordinary course of business, to make a calculation under the *Eichleay* formula. (Doc. 23-8 at pp. 1). In addition to seeking exclusion of these two reports, Defendant also seeks exclusion of the "testimony of Hannis T. Bourgeois, Stamper, and Bonnecaze . . ." (Doc. 23 at p. 1).[1]

## II. Motion in Limine Standard for Expert Testimony

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Rule 702 states: "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702; *see Daubert v. Merrell Dow Pharmacueticals*, 509 U.S. 579 (1993).

Rule 702 is in effect a codification of the United States Supreme Court's opinion in *Daubert*, wherein the Supreme Court held that trial courts should serve as gatekeepers for expert testimony and should not admit such testimony without first determining that the testimony is both "reliable" and "relevant." *Id.* at 589. *Daubert* was concerned with limiting speculative, unreliable, and irrelevant opinions from

---

[1] The Court notes that the name of Randy Bonnecaze, CPA does not appear on either of the disputed reports. Furthermore, although Mr. Bonnecaze is listed in Plaintiffs' expert witness list, (Doc. 23-6 at ¶ 3), Plaintiffs have stated that HTB and Mr. Bonnecaze are not expected to testify at trial, (Doc. 28 at p. 3).

reaching a jury. *Id.* at n. 7. To satisfy their "gatekeeper" duty, trial courts look at the qualifications of experts and the methodology used in reaching their opinions and will not attempt to determine the accuracy of the conclusion reached by the expert. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002).

The validity or correctness of the conclusions an expert reaches is for the fact finder to determine after the *Daubert* analysis. *Id.* at 250. Further, as explained in *Scordill v. Louisville Ladder Group, L.L.C.*, No. 02–2565, 2003 WL 22427981, at *3 (E.D.La. Oct. 24, 2003) (Vance, J.):

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. See *Daubert*, 509 U.S. at 596 [113 S.Ct. 2786]. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Id. (citing *Rock v. Arkansas*, 483 U.S. 44, 61, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)). The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to " 'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.' " *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir.1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir.1987)).

"Notwithstanding Daubert, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.' " *Johnson v. Samsung Electronics America, Inc.*, 277 F.R.D. 161, 165 (E.D.La. 2011) (citing Fed.R.Evid. 702 Advisory Committee Notes to 2000 Amendments).

Rule 703 of the Federal Rules of Evidence provides that the facts or data supporting an expert's opinion "need not be admissible in evidence in order for the

4

opinion or inference to be admitted" if the facts or data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Trial courts "should defer to the expert's opinion of what data they find reasonably reliable." *Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1432 (5th Cir. 1989), cert. denied, 493 U.S. 935 (1989). The number of sources on which an expert may reasonably rely "is virtually infinite," and such sources include interviews, reports prepared by third parties, scientific theories or test results, clinical and other studies, technical publications, business, financial, and accounting records, economic statistics, opinions of other experts, and general knowledge or experience. Jack B. Weinstein and Margaret A. Berger, 4 Weinstein's Federal Evidence § 703.04[3], at 703-15 to 703-20 (2d ed. 2005).

### III.   The Parties Arguments

Defendant advances four arguments to persuade the Court to exclude the two disputed reports and any accompanying testimony of Mr. Stamper, Mr. Bonnecaze, or HTB: 1) the May 15, 2014 report was based on unaudited and unreviewed financial data of RCS; 2) testimony by Mr. Stamper, Mr. Bonnecaze, or HTB would contravene standards set forth by the American Institute of Certified Public Accountants ("AICPA") which discourages accountants from engaging in both attest services and expert witness services for the same client; 3) the May 15, 2014 report included certain costs prohibited by the Code of Federal Regulations and failed to explain significant increases in certain costs; and 4) Mr. Stamper and Mr. Bonnecaze failed to comply with Federal Rule of Civil Procedure 26, because they did not disclose their

compensation or the cases in which they have testified in the last four years. (Doc. 23-1 at pp. 6—13).

The gravamen of Defendant's first argument is that the May 15, 2014 report is unreliable under *Daubert*. Defendant asserts that errors revealed by the July 16, 2012 review demonstrate that the unaudited and non-reviewed records relied upon in the May 15, 2014 report were prone to significant accounting mistakes. (Doc. 23-1 at p. 7). Put differently, Defendant asserts that if a review, rather than an audit, discovered significant accounting errors of RCS's financial statements, it logically follows that the May 15, 2014 report was based on unreliable data and that the calculations contained therein are susceptible to an unacceptable risk of error. (*Id.*). In further support of its argument that audited financial documents should have been used to calculate damages under the *Eichleay* formula, Defendant seizes upon the following language contained in the May 15, 2014 report: "[i]t is reasonable when questioning the validity of *Eichleay* calculations to demand that the calculations be based upon audited financial statements to determine actual home office overhead costs." (Doc. 23-1 at pp. 6—7; Doc. 23-8 at p. 27).

Plaintiffs first counter that there is no requirement that an expert preparing an *Eichleay* calculation use reviewed or audited financial statements. (Doc. 28 at p. 4). Plaintiffs assert that while Defendant may take issue with the data relied upon by Mr. Stamper, it otherwise does not question the accuracy of his calculations as applied to that data. (Doc. 28 at p. 4). Plaintiffs further assert that Rule 703 permits an expert to base an opinion of facts or data he actually perceives, even if such facts

or data are not themselves admissible. (*Id.*). Ultimately, Plaintiffs aver that Defendant's arguments speak to the weight that should be afforded to the May 15, 2014 report and accompanying testimony, not their admissibility. (*Id.* at p. 7).

Second, Plaintiffs assert that Defendant cited no authority for the proposition that Mr. Stamper, Mr. Bonnecaze, or HTB are precluded from testifying at trial simply because Mr. Stamper provided attest services to RCS in the July 16, 2012 review. Plaintiffs assert that Mr. Stamper used various other financial documents produced by RCS, aside from his earlier review, to make the *Eichleay* calculations contained in his May 15, 2014 report.

Next, Plaintiffs suggest that application of the Code of Federal Regulations is a disputed issue of law in this case, because Defendant is a contractor and not an executive agency. (*Id.* at p. 10). Regardless, Plaintiffs maintain that several small errors in Mr. Stamper's calculations should not render his entire report and testimony inadmissible under *Daubert*. (*Id.* at p. 11). Rather, Plaintiffs submit that as an experienced certified public accountant, Mr. Stamper can "quickly and easily" adjust the disputed variables such that the whole of his testimony and report are not flawed or inaccurate. (*Id.*).

Lastly, Plaintiffs assert that a packet was sent to Defendant's former counsel containing a copy of Mr. Stamper's report with attendant exhibits, an engagement letter setting forth the fees charged by HTB, and a firm brochure of Mr. Stamper and Mr. Bonnecaze's curriculum viteas. Plaintiff further asserts that Mr. Stamper is the

only expert from HTB who will testify and that he has not testified in any previous matter in the last four years. (*Id.* at Doc. 12).

## IV. Analysis

Defendant does not assert that the two reports at issue are irrelevant, nor does it argue that Mr. Stamper, Mr. Bonnecaze, or HTB are unqualified or incompetent to engage in financial accounting services. Rather, Defendant asserts that Mr. Stamper's use of RCS's unaudited financial records to determine damages under the *Eichleay* formula renders his report and testimony unreliable. Defendant has not cited—and the Court has not found—any authority, however, that supports Defendant's position that calculations under the *Eichleay* formula *require* the use of audited or reviewed financial statements. (*See* Doc. 23-1).

Viewed in this light, the Court concludes that it is not unusual for a CPA to review and prepare summaries and calculations of construction and business expenses from a company's underlying accounting and business records. *See, e.g. Flagship W., LLC v. Excel Realty Partners, L.P.*, No. 02-5200, 2007 WL 1574967, at *19 (E.D. Cal. May 30, 2007).[2] In fact, "[c]ompany records and statements by company personnel are types of data reasonably relied upon by accountants, and opinions based on those types of information are typically admissible under Rule 703." *Mac Sales v. E.I. Dupont De Nemours & Co.*, Civ. A. No. 89-4571, 1992 WL 396864, at *5 (E.D. La. Dec. 18, 1992) (citing *Int'l Adhesive Coating Co. v. Bolton Emerson Int'l*,

---

[2] The Court also notes briefly that this is not a case in which an expert bases an opinion on another expert who is unavailable to testify at trial. Here, Plaintiffs intend to call Mr. Stamper as a witness, and Defendant may fully cross-examine him about his calculations then.

851 F.2d 540, 544–45 (1st Cir. 1988) (accountant may provide expert opinion based on company records and interviews with employees); *United States v. Affleck*, 776 F.2d 1451, 1456–58 (10th Cir. 1985) (accountant may testify as to solvency of corporation based on what he had been told by corporation's employees); *Bauman v. Centex Corp.*, 611 F.2d 1115, 1120 (5th Cir. 1980) (accountant may rely on files and financial statements of corporation)).

Additionally, the Court finds that language in Mr. Stamper's report suggesting that it "is reasonable to demand that [*Eichleay*] calculations be based upon audited financial statements . . ." is not dispositive. (Doc. 23-8 at p. 27). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land, More or Less Situated in Lefore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). Matters left for the jury's consideration include an expert's alleged miscalculations, erroneous assumptions, and inconsistencies to which a party objects. *See Southwire Co. v. J.P. Morgan Chase & Co.*, 258 F.Supp.2d 908, 935 (W.D.Wis. 2007) ("the alleged errors and inconsistencies are grounds for impeaching the credibility of the experts and the reliability of their ultimate findings; however, mistakes and miscalculations are not grounds for excluding evidence." (citing *Daubert*, 509 U.S. at 596)). The Court finds that the data relied upon by Mr. Stamper and, separately, his inclusion of certain disputed costs speak to the weight and credibility of his report and testimony.

9

The Court further finds that the services provided by Mr. Stamper, Mr. Bonnecaze, or HTB to Plaintiffs do not create a conflict of interest that warrants the exclusion of either report or related testimony. Any perceived conflict of interest goes to the credibility of such testimony and the weight to be assigned to it.

Lastly, the Court agrees with Defendant that Plaintiffs' expert disclosures are deficient. A cursory inspection of Plaintiffs' disclosures, for example, reveals that Mr. Stamper stated in his May 15, 2015 report that he would bill his "standard hourly rate" without specifying that rate. (Doc. 23-8 at p. 30). Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). The Court has broad discretion in deciding whether a violation is substantially justified or harmless. *Barrett v. Atl. Richfield, Co.*, 95 F.3d 375, 380 (5th Cir. 1996). In exercising this discretion, the Court considers the following factors: "(1) the explanation, if any, for the party's failure to comply with the discovery order; (2) the prejudice to the opposing party of allowing the witnesses to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the witnesses' testimony." *Id.* at 380.

Trial in this matter has been reset to February 29, 2016. Upon review, the Court finds that the appropriate manner to address the minor deficiencies raised by Defendant in Mr. Stamper's and Mr. Bonnecaze's expert disclosures is to allow

10

Plaintiffs to timely supplement their disclosures and allow Defendant to conduct additional discovery related to any supplemental material.

## V. Conclusion

Accordingly,

**IT IS ORDERED** that Defendant's **Motion in Limine to Exclude Expert Testimony of Hannis T. Bourgeois, LLP, Ronnie E. Stamper, CPA, and Randy Bonnecaze, CPA (Doc. 23)** is **DENIED**.

**IT IS FURTHER ORDERED** that, to the extent necessary, Plaintiffs supplement the expert disclosures of Mr. Stamper and Mr. Bonnecaze to comply with Fed.R.Civ.P. Rule 26(a) by December 21, 2015.

**IT IS FURTHER ORDERED** that Defendant conduct any additional discovery related to the aforementioned supplemental disclosures by January 8, 2016.

Baton Rouge, Louisiana, this 15th day of December, 2015.

**BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

11