UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ROLAND A. ALONSO, ET AL.                                    CIVIL ACTION

VERSUS

WESTCOAST CORPORATION                          NO.: 13-00563-BAJ-RLB

## RULING AND ORDER

Before the Court is the **Motion for Award of Costs and Attorney's Fees**
**(Doc. 103)** filed by Roland A. Alonso and RCS Contractors, Inc. ("Plaintiffs"), the
**Renewed Motion For Judgment as a Matter of Law, Motion to Amend**
**Judgment, and Alternative Motion for New Trial (Doc. 104)** filed by Westcoast
Corporation ("Defendant") and the **Motion to Alter or Amend Judgment (Doc.**
**105)** filed by Plaintiffs. The parties filed memoranda in opposition, (Docs. 112, 117,
122), replies, (Docs. 123, 124), and a sur-reply, (Doc. 127), where applicable.
Jurisdiction is proper under 28 U.S.C. § 1332.

## I.    BACKGROUND

This case arises from a dispute over a construction project to relocate the Baton
Rouge West Roosevelt Street Sewer Force Main that was supervised by the United
States Army Corp of Engineers. (Doc. 1 at ¶ C-1). On August 23, 2010, Plaintiffs
assert that RCS Contractors, Inc. ("RCS") entered into a subcontract with Defendant
under which it agreed to provide all of the labor, materials, equipment, and
supervision required to complete the Project. *Id.* at ¶ C-5. Under the terms of the
subcontract, Plaintiffs also allege that RCS was required to adhere to plans and

1

specifications provided by the Army Corp of Engineers. *Id.* Plaintiffs further assert that mismanagement of the Project resulting from deficient plans caused significant delays and extra work that, in turn, caused them to incur unexpected costs. (Doc. 1 at ¶¶ C-6, C-10, C-13, C-17–20). Plaintiffs allege that Defendant knew or should have known about deficiencies in the Project plans but nonetheless ordered work to continue, *Id.* at C-6–17, and that Defendant failed to timely submit stand-by invoices to the Army Corp of Engineers, *Id.* at ¶ C-23–26. Because of Defendant's actions, Plaintiffs allege that Defendant is liable for the damages they sustained. *Id.* at ¶¶ E-1–5; J-1–K-4.

Trial began on September 20, 2016. (Doc. 96). On September 22, 2016, Defendant filed motions under Federal Rule of Civil Procedure ("Rule") 50(a), seeking judgment as a matter of law on Plaintiffs delayed payment, unjust enrichment, and bad faith breach of contract claims. (Docs. 92–94). The Court granted Defendant's motion on Plaintiffs unjust enrichment claim for reasons stated on the record. (Doc. 98).

On September 23, 2016, at the conclusion of trial, the jury returned a verdict in favor of Plaintiffs, finding Defendant liable for breach of contract, bad faith breach of contract, failure to timely pay monies owed under the contract, and awarded damages accordingly. (Doc. 101). The jury also awarded reasonable attorney's fees. *Id.* at ¶ 6. Thereafter, on September 30, 2016, the Court entered the following Final Judgment:

> **IT IS ORDERED, ADJUDGED, AND DECREED** that judgment is entered in the amount of $304,189.00 for bad faith breach of contract, $66,450.00 for violation of the Prompt Payment Statute, and $407,685.00 for home-office overhead, in favor of the Plaintiff Roland

Alonso and RCS Contractors and against Defendant Westcoast Corporation, and this action is hereby **DISMISSED**.

(Doc. 102). The parties timely filed their respective motions shortly after the Court entered the Final Judgment. (Docs. 103–105). The Court will discuss each motion in turn.

## II. DISCUSSION

### A. Renewed Motion for Judgment as a Matter of Law

Defendant argues that there is insufficient evidence to support the jury's verdict that Defendant breached the subcontract agreement it had with Plaintiffs in bad faith. (Doc. 104-1 at p. 3–4). Plaintiffs bad faith breach of contract claims stem from Defendant's alleged failure to submit all change orders, extensions of time, and cost requests submitted by Plaintiffs to Garner Services, the contractor, who was then obligated to submit requests to the Army Corp of Engineers, the owner, as outlined in the subcontract agreement. (Doc. 1). Defendant maintains that the evidence demonstrates that it performed its obligations under the subcontract agreement, and that there was no evidence to support the jury's finding that any failure to perform these obligations was done in bad faith. (Doc. 104-1 at p. 3–4). In support of this claim, Defendant cites the relevant provision of the subcontract agreement, which provides that "the Contractor (Defendant) under [Section 11 of the contract] merely acts as a conduit to provide the Subcontractor (Plaintiff) access to the Owner, Army Corp of Engineers, to seek reimbursement or damages incurred or delays caused by the Owner and/or its agents." (Doc. 104-1 at p. 7).

Defendant also cites the deposition and trial testimony of Michael Meredith, Defendant's Project Manager, in which he testified that that he forwarded all change order submittals from RCS "up the ladder" to Garner Services, who then forwarded the change orders to the Army Corp of Engineers. *Id.* Plaintiffs counter, arguing that the operative term in the subcontract agreement forming the basis of Plaintiff's breach of contract claim was the portion of Section 11 in which Defendant agreed to "provide the Subcontractor (Plaintiff) *access* to the Owner[.]" (Doc. 122 at p. 9) (emphasis added). Plaintiffs cite the trial testimony of Roland Alonso, who testified that despite numerous efforts to gain access to the Army Corp of Engineers regarding its numerous change orders, Defendant failed to facilitate access in accordance with Plaintiffs' requests. *Id.* It is in this manner, Plaintiffs argue, that Defendant breached its contractual obligation under Section 11 of the subcontract agreement.

Defendant also argues that it is entitled to judgement as a matter of law on Plaintiff's claim that Westcoast unlawfully delayed payment without reasonable cause. (Doc. 104-1 at p. 4). Defendant maintains that because RCS never completed the West Roosevelt Project, Westcoast had reasonable cause to withhold payments and/or deduct payments owed to RCS. *Id.* at 4–5.

A motion under Rule 50(b) "in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Flowers v. S. Reg'l Phys. Servs., Inc.*, 247 F.3d 229, 235 (5th Cir. 2001) (quoting *Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 830 (5th Cir. 2000)). Therefore, under Rule 50(b), "judgment as a matter of law is proper after a party has been fully heard by the jury on a given issue, and there

is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." *Id.* In evaluating a Rule 50(b) motion, a court must "consider all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party." *Id.* Because all reasonable inferences and credibility determinations should be resolved in favor of the non-movant in a Rule 50(b) motion for judgment as a matter of law, "judgment as a matter of law should not be granted unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Id.*

The Court finds that there is sufficient evidence in the record to support the jury's finding that Defendant breached the contract with Plaintiffs, and Defendant unlawfully delayed payment without reasonable cause, and therefore the jury's verdict on this claim should not be disturbed. Specifically, there is ample evidence that would allow the jury to find that Defendant failed to facilitate direct access to the Army Corp of Engineers under Section 11 of the subcontract agreement. (*See* Doc. 122 at p. 9). Indeed, Roland A. Alonso testified as much. (Doc. 122 at p. 9). The Court also finds that whether Plaintiffs can recover for bad faith and delayed payment turns on questions of fact, and therefore the jury's decision shall stand. The Renewed Motion for Judgement as a Matter of Law is denied.

## B. Motion for New Trial/Remittitur

Defendant argues that there was insufficient evidence to support the jury's verdict, and therefore Defendant is entitled to a new trial. (Doc. 104-1 at p. 5). In a

diversity case, a district court must apply the new trial and remittitur standard of the forum in which it sits. *Fair v. Allen*, 669 F.3d 601, 604 (5th Cir. 2012). Louisiana law provides that a new trial shall be granted "[w]hen the verdict or judgment appears clearly contrary to the law and the evidence," La. Code Civ. P. art. 1972, and permits the court to grant a new trial "in any case if there is good ground therefor, except as otherwise provided by law," *id.* art. 1973. When granting a new trial, trial courts have broad discretion. *Davis v. Wal–Mart Stores, Inc.*, 774 So.2d 84, 93 (La. 2000). The court can evaluate the evidence, draw its own inferences and conclusions, and determine whether the jury "erred in giving too much credence to an unreliable witness." *Joseph v. Broussard Rice Mill, Inc.*, 772 So.2d 94, 104 (La. 2000). However, a "jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence." *Davis*, 774 So. 2d at 93 (quoting *Gibson v. Bossier City Gen. Hosp.*, 594 So.2d 1332, 1336 (La. Ct. App. 1991)).

Defendant also argues that the Court should lower the jury's verdict in each category of damages. (Doc. 104-1 at p. 14). The Court will therefore construe the Motion for a New Trial, as a motion for remittitur in the alternative. *See Thomas v. Texas Dep't of Criminal Justice*, 297 F.3d 361, 368 (5th Cir. 2002) (holding that courts have the discretion to convert a motion for new trial to a motion for remittitur). Under La. Code Civ. P. art. 1814, remittitur is an alternative to a new trial, when the "trial court is of the opinion that the verdict is so excessive or inadequate that a new trial should be granted for that reason only." *Id.* The remedy "is to be entered only if the issue of quantum is clearly and fairly separable from other issues in the case."

*Id.* Further "the Louisiana statutory scheme requires the consent of the party adversely affected by an additur or remittitur." *Falterman v. Schunemeyer*, 153 So. 3d 1284, 1285 (La. Ct. App. 2014) (quoting *Accardo v. Cenac*, 722 So.2d 302, 306 (La. Ct. App. 1998). If the adversely affected party does not consent to remittitur, it can choose to hold a new trial. *Id.*

### a. Breach of Contract and Prompt Payment Act

Defendant argues that the $304,189.00 awarded for breach of contract is excessive because only one change order was in dispute at trial totaling $107,779.99. (Doc. 104-1 at p. 6). But as Plaintiffs point out, they maintained that there were numerous change orders in dispute. (Doc. 122 at p. 7). Defendant next contends that they are not liable for the costs of flagmen because Schedule A, Section 50 of the contract provides that the subcontractor is responsible for these costs. (Doc. 104-1 at p. 6). However, based on the testimony of Roland Alonso, who testified that RCS was never asked to reimburse anyone for these costs, and that the coordination of flaggers was solely the responsibility of Westcoast, the verdict is not excessive. (*See* Doc. 122-3 at 55:15–57:3). Defendant also asserts that the $66,450 awarded as a penalty for delayed payments is contrary to the Prompt Payment Act, and is excessive. (Doc. 104-1 at p. 10). Specifically, Defendant argues that Plaintiffs only presented evidence that Defendant may have unlawfully delayed payment of $127,025.86 and because the Prompt Payment Statute caps penalties at fifteen percent of the outstanding balance, the most Defendant could be liable for in this category of damages is $19,053.88. *Id.* at p. 11. However, the Court is satisfied that sufficient evidence was

presented from which the jury could conclude that there were delayed payments in excess of $127,025.86. (Doc. 122-1 at p. 13–14). Indeed, evidence was presented that multiple change orders were withheld. *Id.* The Motion for a New Trial is denied relative to the breach of contract and Prompt Payment Act claims.

### b. Home Office Overhead Damages

Defendant also argues that the jury's $407,685.00 award for home office overhead is excessive. (Doc. 104 at p. 13). A contractor may recover overhead expenses "where, as a result of the defendant's conduct . . . the plaintiff may have suffered a work stoppage and may have wasted overhead expenses because labor and equipment were idle during such a stoppage." *Harbor Const. Co. v. Bd. of Sup'rs of Louisiana State Univ. & Agr. Mech. Coll.*, 69 So. 3d 498, 509 (La. Ct. App. 2011). Home office overhead includes the "costs of running a business, such as accounting and payroll services, general insurance, salaries of upper-level management, heat, electricity, taxes, and depreciation." *Gilchrist Const. Co., LLC v. State, Dep't of Transp. & Dev.*, 166 So. 3d 1045, 1064 (La. Ct. App. 2015) (quoting *JMR Const. Corp. v. United States*, 117 Fed. Cl. 436, 442 (2014)).

To recover home office overhead damages, a contractor must first establish "that there was a government-caused delay not excused by a concurrent contractor-caused delay." *Gilchrist*, 166 So. 3d at 1065 (citing *JMR Const. Corp.*, 117 Fed. Cl. at 442-43). Second, a contractor must establish "that it incurred additional overhead expenses, either because the contract's performance period was extended or because the contractor would have finished prior to the un-extended performance period's

8

close." *Id.* Third, it must show "that it was required to remain on standby for the duration of the delay." *Id.* A contractor is on standby only if "the government caused delay was 'not only substantial but was of an indefinite duration,' during the delay, [the contractor] was required to return to work 'at full speed and immediately,' and the contractor must show a suspension of most if not all of the contract work." *Id.*

Plaintiffs argue that RCS experienced home office overhead damages during two periods. First, from February 17, 2011 through October 10, 2011, or 235 calendar days. (Doc. 122 at p. 15). Second, from December 6, 2011 through January 18, 2012, or 38 calendar days. *Id.* The Court finds that it is clearly contrary to the law and evidence for the Plaintiffs to receive any damages for purported home office overhead damages. The jury therefore grossly miscalculated home office overhead damages.

First, it was clearly contrary to the law and evidence for the jury to award home office overhead damages for the first purported 235 day delay. At trial, Plaintiff Roland Alsono testified that RCS began construction on the West Roosevelt Project on February 10, 2011. (Doc. 107 at 46:11-19). Mr. Alonso testified that Michael Meredith from Westcoast advised him to begin construction. *Id.* Mr. Alonso then testified that RCS had to stop construction after four or five days because certain joints were not mechanically restrained, as he expected. *Id.* at 48:1-9. Rather they were slip joints. *Id.* As a result, the West Roosevelt Project had to be redesigned with the help of engineers to accommodate for that different kind of joint. *Id.* at 56-60. Mr. Alonso further testified that it was not until October 10, 2011 that he was able to begin construction on the Project again. *Id.* at 75:20-21.

To recover home office overhead, RCS must establish that it was on standby for the entire period of delay. A requirement of being on standby is that a contractor is required to return to work "at full speed and immediately." *See Gilchrist*, 166 So. 3d at 1065 (quoting *JMR Const. Corp.*, 117 Fed. Cl. at 442-43). This requirement exists because home office overhead damages account for the fact that a contractor cannot undertake other work, while being on standby for a delayed project. *See Gilchrist*, 166 So. 3d at 1065.

Here, however, the testimony of Plaintiff Alonso and Plaintiff's own expert, Jerry Householder, show that RCS was not on standby and did not return to work "at full speed and immediately." Mr. Alonso testified that he received an e-mail from Michael Meredith on September 30, 2011, informing him that RCS should go back to work. (Doc. 107 at 74:11-15). But Mr. Alonso testified that RCS did not actually return to work until October 10, 2011—ten days later—because his personnel were working other jobs, and were not on standby. *Id.* at 68:15-69:11, 75:9-11. Plaintiff's own expert, Dr. Householder testified that although RCS' equipment was on standby, its manpower was not. Doc. 111 at 37:19-20. He explained that if RCS was "truly on standby, they should be back to work in a day or two." *Id.* at 37:21-22. Allowing any overhead damages for this period of delay—when RCS was working on other jobs— would amount to double dipping. Accordingly, the Court finds that damages for the 235 day delay are clearly contrary to the law and evidence.

It was also clearly contrary to the law and evidence for the jury to award damages for the December 6, 2011 through January 18, 2012, delay because there

was insufficient evidence from which the jury could conclude that RCS was on standby for this period. At trial, Mr. Alonso testified that in December, 2011, he discovered a leaking joint system. (Doc. 107 at 103:3-24). After informing everyone on the project about the leak, Mr. Alonso testified that that on December 7, 2011, he was told to stop construction and to standby by the Army Corps of Engineers and Westcoast so that they could determine how to correct the problem. *Id.* at 104:6-105:24. Mr. Alonso testified that he left the equipment at the project on standby, but that personnel were not on standby. *Id.* at 106:1-7. Plaintiffs argue that the evidence supports home office overhead damages for this period by citing to a January 6, 2012 letter from Mr. Alonso to Mr. Meredith at Westcoast Corporation, in which Mr. Alonso estimated the overhead costs it would incur as a result of being on standby. (Doc. 110 at p. 30:16-31:10); Plaintiff's Exhibit 90. These costs total $58,563.32. Plaintiff's Exhibit 90 at p. 3.

However, like the first delay, there was no evidence from which the jury could conclude that RCS was on standby because there was no testimony that they returned to work "at full speed and immediately." *See Gilchrist*, 166 So. 3d at 1065 (quoting *JMR Const. Corp.*, 117 Fed. Cl. at 442-43). In fact, there was no testimony about how long it took for RCS to return to work after this second delay. Plaintiffs did introduce a Change Order, stating that there was downtime due to leaking joints from December 8, 2011 through January 18, 2011. *See* Plaintiffs Exhibit 14. And Plaintiffs introduced the estimated downtime costs. *See* Plaintiff's Exhibit 90. But neither document describes how long it took RCS to return to work, nor was there testimony

from which the jury could conclude that RCS returned to work immediately. Plaintiffs therefore manifestly failed to meet its burden to show that it was on standby.

In sum, Plaintiffs failed to demonstrate that RCS was on standby and able to return to work at full speed and immediately for both periods of delay. The jury therefore grossly miscalculated Plaintiffs damages when it awarded $407,685.00 in home office overhead damages. Because the Court finds that the $407,685.00 award for home office overhead was clearly contrary to the law and evidence, Defendant is entitled to a new trial. However, the Court also finds that a remittitur is appropriate because the issue of damages is fairly separable from the other issues in this case. The Court recognizes that because Plaintiffs are adversely effected by this remittitur, they must be given the option of accepting it or electing to hold a new trial. *Falterman v. Schunemeyer*, 153 So. 3d 1284, 1285 (La. Ct. App. 2014) (quoting *Accardo v. Cenac*, 722 So.2d 302, 306 (La. Ct. App. 1998). Of course, if Plaintiffs elect to seek a new trial, it will be limited solely to the issue of home office overhead damages.[1]

### C. Motion to Alter or Amend the Judgment

Plaintiffs filed a motion to alter or amend the Court's Final Judgment, arguing that the Judgment is "inconsistent with the jury's verdict, or the express language

---

[1] The Court is hard-pressed to see how Plaintiffs will be able to show that they were on standby ready to return to work, at full speed, and immediately, at a new trial. Plaintiffs took extensive discovery and had a significant amount of time to prepare for trial and yet failed to put on evidence that RCS was required to return to work at full speed and immediately. This element is well-established in law and was contained in the jury instructions. (*See* Doc. 122-1).

contained in the stipulated Jury Verdict Form" in several ways. [2] (Doc. 105-1 at p. 3).

Plaintiffs argue that the Judgment does not reflect that Defendant's bad faith breach

of contract was a necessary part of the calculus for the jury's $66,450.00 award for

Defendant's failure to promptly pay Plaintiffs and the jury's $405,685.00 award for

Plaintiff's home-office overhead costs. (Doc. 105-1 at p. 3). Plaintiffs also claim that

the judgment does not reflect that they are entitled to attorney's fees for Defendant's

failure to timely pay Plaintiffs. *Id.* Defendant counters that Plaintiffs fail to provide

a legal basis under Rule 59(e) to justify the amendment they seek. (Doc. 112 at p. 2).

More specifically, Defendant asserts that Plaintiffs' proposed amendments to the

Judgment would be a post-trial amendment to the jury verdict form, a request that

Defendant argues has no procedural or legal support and which would be based on

"pure speculation" of the jury's damage awards. *Id.* at p. 3.

To prevail on a motion to alter or amend judgment under Rule 59(e), the

moving party must show (1) an intervening change in controlling law; (2) the

availability of new evidence not previously available; or (3) a manifest error of law or

fact. *See Schiller v. Physicians Resource Group, Inc.*, 342 F.3d 563, 567 (5th Cir.

2003). A Rule 59(e) motion is "not the proper vehicle for rehashing evidence, legal

theories, or arguments that could have been offered or raised before the entry of

judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). Courts

have "considerable discretion" to grant or to deny a Rule 59(e) motion. *Id.* at 479,

---

[2] Defendant also seeks to Amend the Judgement, citing the same reasons that it argues it is entitled to Judgement as a Matter of Law. (Doc. 104-1 at p. 3). The Court therefore denies the Motion to Amend the Judgement for the same reasons it offered in the Court's ruling on Defendant's Motion for Judgment as a Matter of Law.

483. When considering a motion to alter or amend judgment, "[t]he court must strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993).

The Court finds that the Judgment requires some slight modification, but not the amendments that Plaintiffs request. The Court agrees that the Judgment does not reflect that Plaintiffs are entitled to attorney's fees. In response to the question "Should attorney's fees be awarded to Roland A. Alonso and RCS Contractors as a penalty for Westcoast Corporation's failure to timely pay RCS Contractors from monies it received from Garner Services" the jury answered "YES." (Doc. 101 at ¶ 6). The Court will therefore modify the Judgment in this respect.

However, the Court will not alter the Judgment to reflect that Defendant's bad faith breach of contract was a necessary part of the calculus for the jury's award for Defendant's failure to promptly pay Plaintiffs and the jury's award for Plaintiff's home-office overhead costs. To do so would require the Court to rehash evidence and legal theories, and a court may not do this on a motion to alter or amend a judgment. *See HydroChem Inc.*, 367 F.3d at 479. Indeed, it would require the Court to infer, based on the jury's verdict, that the finding of a bad faith breach of contract was a necessary part of the damages award.

### D. Motion for Attorney's Fees and Costs

Plaintiffs seek $148,771.60 in attorney's fees and $35,050.92 in costs. (Doc. 103-1 at p. 2). Louisiana law, which governs this diversity case, provides that

14

attorney's fees are not recoverable except when authorized by statute or contract. *Dep't of Transp. & Dev. v. Williamson*, 597 So. 2d 439, 441 (La. 1992). The instant suit arises under the Prompt Payment Statute, which specifically provides for attorney's fees, La. R.S. 9:2784, and the jury here awarded the Plaintiffs attorney's fees as a penalty for West Coast's failure to timely pay RCS Contractors for monies it received from Garner services, (Doc. 101 at ¶ 6).

The calculation of attorney's fees involves a well-established process." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). "First, the court calculates a 'lodestar' fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. The court then considers whether the lodestar figure should be adjusted upward or downward depending on the circumstances of the case." *Id.* Under Louisiana law, courts consider ten factors in determining reasonable attorney's fees. *Williamson*, 597 So.2d 439 at 442.[3]

### a. Reasonable Hourly Rate

An attorney's reasonable hourly rate should be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984). The "relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits." *Tollett v. City of Kemah*,

---

[3] "Factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge."

285 F.3d 357, 368 (5th Cir. 2002) (quotation marks omitted). "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Id.*

The party applying for attorney's fees bears the burden of producing satisfactory evidence that the requested rate is aligned with prevailing market rates. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). "[A] mere conclusory statement that [a] fee [is] reasonable" is insufficient for calculating the lodestar fee. *See Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). Instead, "[t]o inform and assist the court in [determining the reasonable rate]" the fee applicant should produce an affidavit of the attorney performing the work, information of rates actually billed and paid in similar lawsuits, *see Blum*, 465 U.S. at 896 n. 11, as well as "affidavits of other attorneys practicing [in the community in question]," *Tollett*, 285 F.3d at 368; *Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993). In addition to the community rate, "a court considers the attorneys' regular rates" when determining a reasonable rate. *Kellstrom*, 50 F.3d at 328.

Here, Plaintiffs submitted two affidavits attesting that the rate of $340.00/hour for Attorneys James Clary, Jr. and Christopher Suba is a reasonable rate based on the experience of each attorney, the applicable market rates, and their role in the matter before the court. (Docs. 103-2 and 103-3). At the time of trial, Mr. Clary had practiced law for thirty-three years. (103-3 at p. 1), and Mr. Suba had practiced law for thirteen years. (103-2 at p. 1). Plaintiffs also submitted an Attorney Fee Survey Report, which includes statistics about attorney hourly rates. (Doc. 103-

4). The Report provides that the median hourly rate in the South Region of the United States, which includes Louisiana is $300/hour and the seventy-five percent median rate is $365/hour. *Id.* at p. 41. Based on Mr. Clary's over thirty years of experience, his contributions to this case, his expertise, and the prevailing market rates for attorney's, the Court finds that $340.00/hour is a reasonable rate. The Court, however, finds that $340.00/hour is not a reasonable rate for Mr. Suba. Considering that he has been practicing for only thirteen years, significantly less than Mr. Clary, his expertise, and the prevailing market rates for attorney's, the Court finds that $300.00/hour is a reasonable rate.

### b. Time Incurred

After reviewing the billing statements, the Court also finds that Mr. Suba billed 330.35 hours and Mr. Clary billed 92.39 hours. (*See* Doc. 103-5). Defendant argues that because Plaintiffs' claim for attorney's fees is based on the Prompt Payment Act, the attorney's fees must be limited to the actual fees accrued for the amount owed under the Act. (Doc. 117 at p. 1). More specifically, Defendant maintains that Westcoast paid $127,025.86, the amount owed under the Act on October 14, 2015, and therefore only reasonable fees for the work done by Plaintiff's counsel before that date are owed. (Doc. 117 at p. 3–4). In making this argument, Defendant is attempting to relitigate issues already decided by the jury. The jury flatly rejected this argument when it awarded Plaintiffs damages under the Prompt Payment Act representing far more than $127,025.86.[4] (*See* Doc. 101). And for the

---

[4] The jury was instructed that the damages for withheld payments under the Prompt Payment Act cannot exceed fifteen percent of the balance owed. Considering that the jury awarded $66,450, they

17

reasons offered in the Court's ruling on the Prompt Payment Act *supra* at II(B)(a), these damages are supported by the evidence. Therefore the Court finds that Plaintiffs attorney's fees are not limited to the time worked before October 14, 2015. Otherwise, Defendant does not argue that the time billed by the attorneys is unreasonable, and after reviewing the billing records, the Court finds that the 330.35 hours billed by Mr. Suba and the 92.39 hours billed by Mr. Clary are reasonable.

Defendant next argues that the Court should not award attorney's fees of $9,478.00 attributed to a law clerk because the Prompt Payment Act does not provide for payment of law clerk fees. (Doc. 117 at p. 5). Plaintiffs, however, have not met there burden of producing satisfactory evidence that the fees attributed to the law clerk are reasonable. *See Kellstrom*, 50 F.3d at 324. Plaintiffs have not submitted any evidence about the identity of the law clerk, his or her credentials, or any information about the prevailing rates for law clerks in the Middle District of Louisiana. Thus, the Court will not award attorney's fees for the law clerk.

In sum, the Court will award Plaintiffs attorney's fees in the amount of $130,517.60, consisting of 330.35 hours for Mr. Suba at a rate of $300.00/hour and 92.39 hours for Mr. Clary at a rate of $340.00/hour.

---

appear to have concluded that there were $443,000 in outstanding payments. ($443,000x0.15=$66,450).

### c. Costs

Defendant also contends that Plaintiffs should not be awarded costs because the Prompt Payment Act does not provide for costs. (Doc. 117 at p. 5). In pertinent part, the Prompt Payment Act provides:

> the contractor or subcontractor shall be liable for *reasonable attorney fees* for the collection of the payments due the subcontractors and suppliers. However, any claim which the court finds to be without merit shall subject the claimant to *all reasonable costs and attorney fees* for the defense against such claim.

La. R.S 9:2784 (emphasis added). The case here does not involve a claim that was made without merit, and as such state law only permits the recovery of reasonable attorney fees. However, Rule 54(d) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." There is thus a conflict between Louisiana law, which does not allow for the recovery of costs, and the Federal Rules, which allow for the recovery of costs. The U.S. Court of Appeals for the Fifth Circuit, however, has held that where there is a conflict between Louisiana law and Rule 54(d) regarding the recovery of costs, courts should rely on the Federal Rule because by doing so "no violence is done to the twin aims of the *Erie* doctrine." *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 689 (5th Cir. 1991).

The costs awardable under Rule 54(d) are limited to those listed in 28 U.S.C. § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 107 (1987). These include:

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees

19

and disbursements for printing and witnesses; (4) Fees for exemplification and costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court-appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

If the party being taxed has not objected to a cost, the presumption is that the costs being sought were necessarily incurred for use in the case and will be taxed. *See Embotelladora Agral Regiomontana, S.A. de C.V. v. Sharp Capital, Inc.*, 952 F. Supp. 415, 417 (N.D. Tex. 1997). However, once an objection is made, the party seeking costs bears the burden of verifying that the costs were necessarily incurred in the case rather than just spent in preparation and litigation of the case. *See Fogleman v. Arabian American Oil Co.*, 920 F.2d 278, 286 (5th Cir. 1991).

Plaintiffs seek $35,050.92 in costs. (Doc. 103-1 at p. 2).[5] This includes costs incurred for travel, postage, mediation, copying, court reporter and deposition costs, expert witness fees, and a filing fee. (Doc. 103-5 at p. 20–23). Travel expenses, postage, and mediation are not recoverable under § 1920 because they are not listed in the statute. *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993) (travel expenses); *Raspanti v. U.S. Dep't of the Army*, No. 00-CV-2379, 2001 WL 1081375, at *13 (E.D. La. Sept. 10, 2001) (postage); *Cook Children's Med. Ctr. v. New England PPO Plan of Gen. Consol. Mgmt. Inc.*, 491 F.3d 266, 277 (5th Cir. 2007) (mediation). Plaintiffs also seek over $10,000 in expert fees for Jerry Householder. (Doc. 103-5 at

---

[5] Plaintiffs argue that Rule 54 does not apply because the attorney's fees Plaintiffs seeks are part of the foreseeable damages to which they are entitled. (Doc. 119-1). However, in its verdict the jury already decided the amount of damages that Plaintiffs are entitled to receive. (Doc. 101). Plaintiffs cannot circumvent the jury's damage award by characterizing its attorney's fees and costs as additional damages.

p. 23). Section 1920, however, only provides for court-appointed expert fees, and Mr. Householder was not a court appointed expert. *See* § 1920(6).

Copying fees are recoverable if the reproductions were "necessarily obtained for use in the case[.]" *Fogleman v. ARAMCO*, 920 F.2d 278, 286 (5th Cir. 1991). And while a party need not "identify every xerox copy made for use in the course of legal proceedings, we do require some demonstration that reproduction costs necessarily result from that litigation." *Id.* Plaintiff, however, has only provided vague descriptions like "Photocopies" and "Monthly Photocopy Charge" without explaining why these charges were necessary. (Doc. 103-5 at p. 20–23). Plaintiffs have therefore not made the required showing that the reproduction costs necessarily resulted from litigation. Plaintiffs also seek to recover certain costs apparently associated with depositions. For example, Plaintiffs list several "Quality Litigation Support" charges, and a charge titled "Depo Texas." *Id.* The descriptions are so vague that the Court cannot determine whether these costs were necessarily incurred, and therefore the Court will not award these costs. The only recoverable cost is a $400.00 filing fee, which is expressly allowed by statute. *See* § 1920(1). Therefore, the Court will award costs of $400.00.

III.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion for Award of Costs and Attorney's Fees (Doc. 103)** filed by Roland A. Alonso and RCS Contractors, Inc. is **GRANTED**

**IN PART AND DENIED IN PART**. The Plaintiffs are awarded $130,517.60 in attorney's fees and $400.00 in costs.

IT IS FURTHER ORDERED that the **Renewed Motion For Judgment as a Matter of Law, Motion to Amend Judgment, and Alternative Motion for New Trial (Doc. 104)** filed by Westcoast Corporation is **GRANTED IN PART AND DENIED IN PART**.

IT IS FURTHER ORDERED that the **Motion to Alter or Amend Judgment (Doc. 105)** filed by Roland A. Alonso and RCS Contractors, Inc. is **GRANTED IN PART AND DENIED IN PART**.

IT IS FURTHER ORDERED that the prior Judgment (Doc. 102) shall be is **AMENDED**, such that judgment is conditionally entered as follows:

> **IT IS ORDERED, ADJUDGED, AND DECREED** that judgment is entered in the amount of $304,189.00 for bad faith breach of contract, $66,450.00 for violation of the Prompt Payment Statute, $0.00 for home-office overhead, $130,517.60 in attorney's fees and $400.00 in costs in favor of the Plaintiff Roland Alonso and RCS Contractors and against Defendant Westcoast Corporation, and this action is hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiffs shall file in the record within twenty-one days from the date of this Ruling and Order a written notice to the Court stating whether they accept or reject the foregoing remittitur on home office overhead damages. If Plaintiffs accept the remittitur, final judgment in this matter, consistent with the findings herein, shall be entered. If Plaintiffs reject the remittitur, this case will be set for a new trial on the issue of home office overhead damages only.

Baton Rouge, Louisiana, this 21st day of September, 2017.

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA